IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COUNTRYWAY INSURANCE COMPANY,

      Plaintiff(s),

v.

WALTER P. SLAUGENHOUP, WALTER C. SLAUGENHOUP, DUSTIN C. SAMS an incapacitated person, JULIE L. RAYBUCK his guardian,

      Defendant(s).

07cv1593
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION

**February 22, 2008**

    **I.**    **Introduction.**

Before the Court in this declaratory judgment action, brought pursuant to 28 U.S.C. § 2201, are cross-motions for summary judgment filed on behalf of plaintiff, Countryway Insurance Company ("Countryway" or "insurer"), defendant Dustin Sams (the "victim"), and defendants Walter P. Slaughenhoup ("insured", "son" or "insured son") and Walter C. Slaughenhoup ("father"). Countryway, who issued a farmowner's insurance policy to the insured son, seeks a declaration that it not be required to defend and indemnify the insured son for a negligence action which brought against him (as well as the father).

After careful consideration of the cross motions for summary judgment, the responses thereto, the supporting briefs, and the materials submitted in support of summary judgment, the Court finds that the policy language at issue is ambiguous, and therefore, must be construed in favor of coverage. Accordingly, Countryway has a duty to defend and indemnify the insured son

in the suit brought by the victim. Therefore, the Court will grant the motion for summary judgment brought by Sams (the victim) (doc. no. 28), will grant the motion for summary judgment brought by the Slaugenhoups (insured son and father) (doc. no. 31), and will deny the motion for summary judgment brought by Countryway (doc. no. 18).

## II. Summary Judgment Standards.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

**III.     Material Facts.**

There are no genuine issues of material fact, only issues about the appropriate inferences and legal consequences of the undisputed material facts, and unless noted, the following facts are not disputed.

**Background**

On the morning of July 17, 2006, father and son, who were farmers and were the joint owners of a combine, had determined that the combine had a flat tire. Son jacked up the combine, removed the tire, and placed the tire in the bed of a pickup truck owned by father. After placing the tire in the pickup truck, son exclaimed, "There you are, Pap, go get her fixed." Father, the owner and driver of the pickup truck, was 93 years old, had a history of glaucoma, and was not wearing his glasses despite a driver's license requirement that he wear corrective lenses when operating a motor vehicle. Father was driving his pickup truck to get the tire fixed on July 17, 2006, when his car collided with the victim on Route 58 in front of father's home in Clarion County, Pennsylvania, causing the victim severe injuries.

On October 22, 2007, the victim (through his guardian, Julie L Raybuck) filed a two count amended complaint[1] against both the father and the son in the Court of Common Pleas of Clarion County alleging (1) a claim for negligent operation of the motor vehicle against the father; and (2) a negligence claim under Restatement (Second) of Torts § 302A against the insured son.

According to the amended complaint, the insured son was negligent in several respects in placing the tire in the bed of the pickup truck of his father, when he allegedly knew father was not in a physical condition to drive, when he allegedly requested, permitted, utilized, and allowed father to transport the tire for repair, and when failed to prohibit father from transporting the tire for repair (doc. no. 20-6).

---

[1] The Court has surmised the above factual background from the amended complaint filed in the Court of Common Pleas of Clarion County. The parties have not attached a copy of the original complaint with their filings.

**The Farmowner's Insurance Policy Issued by Countryway**

The starting point of this or any insurance coverage dispute is, of course, the insurance policy. Son was issued a farmowner's insurance policy ("the policy") with Countryway in 2006. The policy period was from May 10, 2006 to May 10, 2007.

The Personal Liability Coverage (Farm) Endorsement in the policy provided liability coverage, as follows:

> Coverage L - - Liability - "We" pay, up to "our" "limit", all sums for which an "insured is liable by law because of "bodily injury" or "property damage" cause by an "occurrence" to which this coverage applies. "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damages" not excluded under this coverage. "We" may make investigations and settled claims or suits that "we" decide are appropriate. "We" do not have to provide a defense after "we" have paid an amount equal to "our" "limit" as a result of a judgment or written settlement.

Doc. No. 21 at 5.

The Personal Liability Coverage (Farm) Endorsement contains the following exclusion, which is central to the coverage dispute:

> 1. Exclusions That Apply to Coverages L and M - This Personal Liability Coverage does not apply to:
>
>> f. "bodily injury" or "property damage" which results from liability imposed by law on an "insured" for the use of a "motorized vehicle," aircraft or watercraft, except if coverage is provided for by an Incidental Motorized Vehicle or Watercraft Coverage.

Doc. No. 21 at 6.[2]

---

[2] Defendant (insured) cites the policy language, which states that this personal liability coverage does not apply to: (c). "'bodily injury' . . . which results from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of 'motorized vehicles' . . . owned or operated by or rented or loaned to an 'insured.'" Doc. No. 20-5. The Court recognizes that defendant cites the above exclusion to show that if the insurer

5

The Incidental Motorized Vehicle or Watercraft Coverage then goes on to list several scenarios which are subject to coverage, however, the parties agree that none of them are applicable here and therefore, the Court will not recount them.

**III. The Law.**

There is no dispute that Pennsylvania law governs the interpretation of the policy. The Supreme Court of Pennsylvania summarized the law of insurance contract interpretation in *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166 (2005), where it stated as follows:

> [W]e begin our analysis by setting forth the well-established rules of insurance contract interpretation. "The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986) (*quoting Standard Venetian Blind Co.* (citations omitted)). When the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id*. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *See id*. "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison Construction Co.*, 735 A.2d at 106 (*quoting Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly

---

wanted to use proper limiting and exclusionary language, it knew how to, yet it chose not to employ similar language in exclusion (f). Although the Court recognizes defendant's argument illustrating the contrast between the two exclusions (exclusions (c) and (f)), it does not rely on this contrast as part of its analysis on ambiguity.

> expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) (*quoting Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

879 A.2d at 171. *See also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363-65 (3d Cir. 2004) (summarizing Pennsylvania law on the interpretation of insurance contracts).

The rule that any ambiguity must be resolved in favor of coverage for the insured recognizes that insurance policies are contracts of adhesion between parties of usually unequal bargaining power, especially regarding the language of such contracts that has been drafted by the insurance industry, *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1075 (3d Cir. 1990), and that "transactions between insurers and insureds are fundamentally different from those between parties to contracts as envisioned by the common law." *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309-10 (3d Cir. 1994).

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). In *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d at 1309, the United States Court of Appeals for the Third Circuit instructed courts applying Pennsylvania law to "examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured." The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Auth. v. E.J. Albrecht Co.*, 59

7

Pa.Cmwlth. 246, 430 A.2d 328 (1981). A determination of whether a contract is ambiguous also is a question of law for the court. *Hutchison*, *supra*.

**IV.     Application**.

Viewed in light of the foregoing principles of insurance contract interpretation, and recognizing that ambiguities in insurance contracts are to be resolved in favor of the insured, the Court finds that the policy in question does not exclude coverage for the alleged negligence of the insured son. As rehearsed, the following exclusionary language in the policy is at the crux of this matter and bears repeating:

> 1. Exclusions That Apply to Coverages L and M - This Personal Liability Coverage does not apply to:
>
>> f. **"bodily injury"** or "property damage" **which results from liability imposed by law on an "insured" for the <u>use</u> of a "motorized vehicle,"** aircraft or watercraft, except if coverage is provided for by an Incidental Motorized Vehicle or Watercraft Coverage.

Doc. No. 21 at 6 (emphasis added).

The question then is whether the insured "used" the motorized vehicle. Crucially, we have an insured who was not the **owner** of the vehicle that caused the accident. Further, the insured was neither the **driver** or **operator** of the vehicle that caused the accident, nor did he entrust a vehicle owned by him to another over whom he had control. At most, we have an insured son who allowed his father to drive a vehicle not owned by the insured son, despite allegedly knowing of his father's incapacities.

Although Countrywide attempts to cast this as a negligent entrustment case under section 308 of the Restatement (Second) of Torts, the claim brought against the insured was not brought

8

pursuant to section 308,[3] but rather, under section 302(A).

Section 302(A) of the Restatement (Second) of Torts states:

> An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

While Countrywide relies heavily on the holding of the Pennsylvania Superior Court in *Pulleyn v. Cavalier Insurance Company*, 505 A.2d 1016 (Pa. Super. 1986) to support its position of excluding coverage, this Court finds the *Pulleyn* case to be inapposite.

In *Pulleyn*, which was a case of first impression, the Superior Court held that an insurer was not obliged to defend an action in trespass based upon an insured's negligent entrustment of a motor vehicle to an employee because of an exclusion in a general liability insurance policy. *Pulleyn* is factually distinguishable from the present case in several material respects. First of all, unlike this case, the insured owned the vehicle in question. Second, unlike this case, the insured entrusted his vehicle to an employee and a claim was brought under section 308 for negligent entrustment. Third, and perhaps most critically, unlike this case, the policy language contained a broad exclusion for "bodily injury" . . . "*arising out of* ownership, maintenance, operation, *use*, loading or unloading of . . . any other automobile . . . operated by any person in the course of his employment by any insured." 505 A.2d at 1018 (emphasis added).

Both parties cite *Erie Insurance Exchange v Transamerica Insurance Company*, 533 A.2d 1363 (Pa. S. Ct. 1987), a case in which the Supreme Court of Pennsylvania held that a homeowner's insurer had a duty to defend a wrongful death action brought against the parents of

---

[3] Unlike section 302(A) which is quoted below, a negligent entrustment claim under section 308 is based on conduct which is under the control of the actor. It typically encompasses situations such as where an insured child engages in negligent conduct.

9

a 3 ½ year old boy who had set a visitor's car in motion. In construing the exclusionary language in favor of the insured, the Court held that the child did not know he was "using" the vehicle. Notably, again, as in *Pulleyn,* and unlike the present case, the language of the policy stated that the policy does not apply to "bodily injury,". . . "*arising out of* the ownership, maintenance, operation, *use*, loading or unloading of . . . any motor vehicle owned or operated by or rented or loaned to any Insured, . . . ." 522 A.2d at 1366 (emphasis added). *See also Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254 (Pa. Super. 2005) (excluding coverage for bodily injury *arising out of* ownership, maintenance, or use in a negligent entrustment case).

In the instant case, had the policy language excluded coverage for liability of an insured for bodily injury *"arising out of"* use of a motorized vehicle, as did the language in *Pulleyn*, *Erie Insurance Exchange,* and *Wilcha*, the policy may have been unambiguous.[4] Instead, the policy at issue excludes coverage for liability for use of a motorized vehicle, but the policy language begs the question of who must be using the vehicle in order for coverage to be excluded. One reasonable interpretation of the policy language would be that the insured himself or someone driving a vehicle under his direct control (such as his child as in *Erie Insurance Exchange,* or an employee driving his vehicle as in *Pulleyn*) must have been using the vehicle in order to exclude coverage. Another more broad interpretation of the policy language would be that any use of a motor vehicle by anyone connected to the insured would operate to exclude coverage. In summary, the key phrase that is notably absent from this policy language was the phrase "arising

---

[4]Puzzlingly, Countryway's argues in the introductory section of its brief in support of summary judgment that the "[P]olicy excluded liability *arising* from the use of motorized vehicle . . . ." (Doc. No. 19 at 1) (emphasis added). As is evident by now, the applicable policy language quoted herein does not include the language "arising from," and Countryway's representation that the policy does include that language is inaccurate.

out of" or "arising from".  Given the fact that the term "use" is subject to different interpretations, that the alleged liability of the insured is not based upon his "use" or even his entrustment of his vehicle, and that the phrase "arising out of" or "arising from" does not precede the word "use," the Court will resolve the ambiguity in the policy language in favor of the insured.  *See Federal Kemper Ins. v. Sicherman*, 739 F.Supp. 991, 998 (E.D.Pa.,1990), citing *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d 563, 566 (1983)) (stating that under the principles stated by the Pennsylvania Supreme Court, the term *using* must be construed in favor of the insured and against the insurer, the drafter of the agreement).

## V.     Conclusion.

For all of the foregoing reasons, the Court finds that the insurance policy language applicable to the underlying negligence claim against the insured son is ambiguous, and that the above case law is distinguishable because the policy exclusions in those cases contained language which was more clear than the present case.  Accordingly, recognizing that insurance contracts are ones of adhesion and that all ambiguities are to be resolved in favor of the insured, the Court will rule in favor of defendants' and against plaintiff in this declaratory judgment action.  *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d at 1075.  Plaintiff, Countryway, must therefore defend the insured on the claim made against him by the victim and shall indemnify him for his liability (if any) to the victim.

The motion for summary judgment by plaintiff, Countryway Insurance Company (doc. no. 18) will be DENIED.  The motion for summary judgment by defendant, Dustin C. Sams', (doc. no. 28) will be GRANTED.  The motion for summary judgment by defendants, Walter C. Slaugenhoup and Walter P. Slaugenhoup (doc. no. 31) will be GRANTED.

An appropriate order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All counsel of record